UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERNAN LOPEZ FONTANA and
MARIANA MORI DE LOPEZ,

                  Plaintiffs,

   -against-

THE REPUBLIC OF ARGENTINA,

                Defendant.

03 Civ. 8531 (LAP)

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is attorney Guillermo Gleizer's motion[1] for attorneys' fees, pursuant to New York Judiciary Law § 475 ("Section 475"), jointly and severally against the Republic of Argentina (the "Republic") and Plaintiffs.  The Republic opposes the motion.[2]  Gleizer also seeks entry of default judgment against Plaintiffs.

    For the following reasons, Gleizer's motion for an award of attorneys' fees is GRANTED, and his motion for entry of default judgment against Plaintiffs is DENIED as moot.

---

[1]  (See Notice of Motion, dated Dec. 15, 2020 [dkt. no. 114]; Memorandum of Law in Support ("Mot."), dated Dec. 15, 2020 [dkt. no. 115]; Reply Memorandum of Law ("Reply"), dated Feb. 10, 2021 [dkt. no. 127]; see also Declaration of Guillermo A. Gleizer, Esq. ("Gleizer Decl."), dated Dec. 15, 2020 [dkt. no. 116].)
[2]  (See Memorandum of the Republic of Argentina in Opposition to Guillermo A. Gleizer's Motion for an Award of Attorneys' Fees ("Opp."), dated Jan. 27, 2021 [dkt. no. 123]; see also Declaration of Rathna J. Ramamurthi In Opposition to Guillermo A. Gleizer's Motion for Attorneys' Fees ("Ramamurthi Decl."), dated Jan. 27, 2021 [dkt. no. 121].)

I.    **Background**

The Court assumes familiarity with this case's general background, which the Court described in its prior order addressing Mr. Gleizer's initial motion for fees, see Fontana v. Republic of Argentina, No. 03 Civ. 8531 (LAP), 2019 WL 8112476, at *1 (S.D.N.Y. Jan. 9, 2019), and which the Court of Appeals also subsequently recounted, see Fontana v. Republic of Argentina, 962 F.3d 667, 670-72 (2d Cir. 2020).   The Court summarizes some relevant context.

Guillermo Gleizer represented Plaintiffs, Hernan Lopez Fontana and Mariana Mori de Lopez, in this lawsuit against the Republic of Argentina relating to defaulted Argentine bonds. See Fontana, 962 F.3d at 670.   The Court entered judgment for Plaintiffs in March of 2006.   (See Judgment, dated March 27, 2006 [dkt. no. 45].)   Plaintiffs later settled their claims with Argentina in February of 2016 without Gleizer's involvement, as part of the Republic's global settlement proposal (the "Propuesta").   (See Ex. 3 to Gleizer Decl. ("MSA"), dated Feb. 8, 2016 [dkt. 116-3].)

On November 6, 2018, Counsel for the Republic informed the Court by letter that it would seek dismissal of this case because Plaintiffs had settled their bond interests and thus no longer held any claims against the Republic.   (Letter from C. Bocuzzi, dated Nov. 6, 2018 [dkt. no. 69].)   On November 13,

2021, Gleizer informed that Court that he intended to seek an order to show cause why the Court should not issue an order granting, among other things, an award of attorney fees in favor of Gleizer and against Plaintiffs and the Republic, jointly and severally.  (See Proposed Order to Show Cause, dated Nov. 13, 2018 [dkt. no. 72].)  After the Court denied as moot Gleizer's motion for an order to show cause because it observed that the Court would retain jurisdiction over collateral matters under the proposed satisfaction of judgment, (see Order, dated Nov. 14, 2018 [dkt. no. 73]), Gleizer moved for an award of attorneys' fees under Section 475, (see Notice of Motion for an Award of Attorneys' Fees Against Plaintiffs & the Republic of Argentina, dated Nov. 26, 2018 [dkt. no. 76).  The Court denied Gleizer's motion on the basis that Gleizer was not entitled to a lien on the settlement proceeds because he did not participate in the settlement.  See Fontana, 2019 WL 8112476, at *2.

The Court of Appeals, in vacating this Court's denial of Gleizer's fee application, held that the enforceability of an attorneys' lien against the proceeds of a settlement pursuant to Judiciary Law § 475 turns not on whether the attorney personally participated in the settlement negotiations, but, rather, attaches to the client's cause of action and is not affected by settlement.  Fontana, 962 F.3d at 670.  The Court of Appeals directed this Court on remand to consider on a more developed

record whether Gleizer unreasonably delayed in bringing his motion.  Id. at 676.  The Court of Appeals also addressed that this Court could consider whether to exercise supplemental jurisdiction over any breach of contract claim that Gleizer might raise or consider whether Plaintiffs have defaulted by their failure to respond to Gleizer's motion.  Id. at 677.[3]

On remand, the parties engaged in limited discovery on the issue of whether Gleizer unreasonably delayed in bringing his motion for fees, (see Stipulation Regarding Limited Discovery, dated Aug. 25, 2020 [dkt. no. 106]), before Gleizer brought the instant motion.

## II.  Applicable Law

"A charging lien is a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action . . . ."  Antonmarchi v. Consol. Edison Co. of N.Y., 678 F. Supp. 2d 235, 240 (S.D.N.Y. 2010) (quoting Chadbourne & Parke, LLP v. AB Recur Finans, 794 N.Y.S.2d 349, 350 (1st Dep't 2005) (citations

---

[3] Plaintiff seems to confuse the Court of Appeals' instruction that the Court could consider whether to entertain supplemental jurisdiction over a breach of contract claim against Plaintiffs. As the Republic points out, this instruction pertains to Plaintiffs, not the Republic, as jurisdiction over the Republic is governed by FSIA Section 1605(a)(2).  (Opp. at 24-25.)  In any case, as described below, because the Court has determined that Gleizer may enforce his Section 475 lien, he need not bring a plenary action for breach of contract against Plaintiffs.

omitted)).  "New York Judiciary Law § 475 . . . governs

attorneys' charging liens in federal courts sitting in New

York."  Itar-Tass Russian News Agency v. Russian Kurier, Inc.,

140 F.3d 442, 448 (2d Cir. 1998).  Section 475 provides in

relevant part:

> From the commencement of an action, special or other
> proceeding in any court or before any state, municipal
> or federal department . . . the attorney who appears for
> a party has a lien upon his or her client's cause of
> action, claim or counterclaim, which attaches to a
> verdict, report, determination, decision, award,
> settlement, judgment or final order in his or her
> client's favor, and the proceeds thereof in whatever
> hands they may come; and the lien cannot be affected by
> any settlement between the parties before or after
> judgment, final order or determination.  The court upon
> the petition of the client or attorney may determine and
> enforce the lien.

N.Y. Judiciary Law § 475.  "[T]he lien created by [Section]

475 . . . is enforceable in federal courts in accordance with

its interpretation by New York courts."  Antonmarchi, 678 F.

Supp. 2d at 240 (citing Chesley v. Union Carbide Corp., 927

F.2d 60, 67 (2d Cir. 1991).

"[A]n attorney need not be counsel of record at the time

a plaintiff receives judgment or settlement proceeds in order

to have a lien on those proceeds, so long as the attorney was

counsel of record at one point in the proceedings."  Petition

of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997).

"[T]he district court has a responsibility to protect its own

officers in such matters as fee disputes." <u>Itar-Tass Russian News Agency</u>, 140 F.3d at 444.

## III. Discussion

### A. Gleizer's Entitlement to Enforce His Section 475 Lien

"Although a charging lien . . . may be enforced even when the proceeds have passed into the possession of the client or a third party with knowledge, the right to enforce such a lien will be waived by any action inconsistent with an intent to enforce the lien . . . .  Therefore, if the attorney knowingly allows the proceeds to pass into the hands of the client or another party without asserting his or her rights, or if the attorney fails to enforce the lien within a reasonable time, the lien will be deemed waived and the attorney relegated to a plenary action against the client for any fees." <u>Kaplan v. Reuss</u>, 113 A.D.2d 184, 187 (2d Dep't 1985) (citations omitted), <u>aff'd</u>, 68 N.Y.2d 693 (1986).

The Republic contends that Gleizer delayed unreasonably by seeking an award of fees in November 2019, just one week after the Republic filed notice of settlement but two-and-a-half years after the Republic actually settled with Plaintiffs in February 2018.  While the Court observes that Gleizer could have done more to confirm whether his clients had settled the case without him, having reviewed the portions of the discovery record submitted by the parties the Court finds that Gleizer did not

delay unreasonably in attempting to enforce his lien in under the circumstances.

Although Plaintiffs and the Republic reached a settlement in February 2016, discovery shows that Gleizer did not become aware of the settlement until the Spring of 2018, despite communicating with his clients and offering his continued assistance to pursue Plaintiffs' claim against the Republic. Gleizer commenced this case on behalf of Plaintiffs in 2003. Three years later, Plaintiffs, with Gleizer's assistance, obtained a judgment against the Republic in the amount of $ 696,385.14.  (See Judgement at 1.)  For years, Plaintiffs obtained no proceeds from the Republic in satisfaction of the judgment.  In 2010, years before Plaintiffs obtained a settlement from the Republic, Gleizer first sought attorneys' fees pursuant to Section 475.  (See Order to Show Cause, dated June 23, 2010 [dkt. no. 60].)  As the Republic points out, in February 2016, the Propuesta was widely publicized, (Opp. at 1), and Plaintiffs signed the MSA on February 8, 2016, (see Ex. 3 to Gleizer Decl. ("MSA") [dkt. no. 116-3], at 8).  The Republic avers that Gleizer should have known that his clients accepted a settlement as part of the Propuesta because "the Republic filed a declaration on the public dockets stating that it had reached agreements in principle with certain large hedge funds, and that payment would be made if enumerated conditions were met,

including vacatur of the so-called pari passu injunctions."
(Opp. at 2-4.)   However, neither Plaintiffs nor the Republic
filed anything on this case's docket indicating that Plaintiffs
had participated in the settlement.

The record indicates that Gleizer made some efforts to
contact Plaintiffs around the time that the Propuesta was
publicized.   On February 16, 2016, Gleizer emailed his clients,
stating that "[t]he Milberg law firm has become co-counsel with
me and is helping to process your claim under an agreement with
my firm" and that there was "no change in the attorney's fees or
expenses that you are obligated to pay."   (Ex. 6 to Gleizer
Decl. [dkt. no. 116-6], at ARG-FON0000237.)   This followed his
sending an email (albeit in draft form) to Plaintiffs on
February 11, 2021, in which he communicated that Michael Spencer
of Milberg LLP, who had noticed his appearance in 2015, "is
proceeding with collection efforts for your judgment."   (Ex. I
to Ramamurthi Decl. [dkt. no. 121-9], at ARG-FON0000217.)
Despite these emails communicating counsel's availability to
pursue collection, Plaintiffs never informed Gleizer that they
in fact had already reached a settlement with the Republic.

In September 2017, Pablo Giancaterino, Gleizer's former co-
counsel, filed a criminal fraud case against Plaintiffs in
Argentina (the "Ushuaia Case") in connection with their non-
payment of attorneys fees.   Giancaterino and Gleizer were no

longer associated professionally at this time.  (Reply at 10;
Ex. 6 to Gleizer Decl. [dkt. no. 116-6], at ARG-FON0000223.)   In
a decision in that case, the Argentine court stated that in
early 2017, Giacaterino had "received a telephone call from the
attorneys of the López Fontana family in the United States"
informing him that Plaintiffs had accepted a settlement,
although there is no indication, beyond a reference to U.S.
counsel, that this phone call came from Gleizer.  (See Ex. K to
Ramamurthi Decl. [dkt. no. 121-11], at 3.)   The Republic points
to little else in the record that contradicts Gleizer's
assertion that he became aware of the Ushuaia Case sometime
between February 22, 2018 and April 17, 2018, around the time he
retained counsel in that action.  (Ex. R to Ramamurthi Decl.
[dkt. no. 121-18], at 3.)

Gleizer's actions immediately upon the Republic's filing of
notice of satisfaction of the judgment based on its settlement
with Plaintiffs further persuade the Court that Gleizer was not
aware of the settlement until 2018 and acted relatively without
delay after he learned of it.  After the Republic filed its
notice of satisfaction of the judgment on November 6, 2018,
Gleizer moved first, on November 13, 2018 for an order to show
cause (dkt. no. 72) and, then, on November 26, 2018, filed his
motion for fees (dkt. no. 76).  Moreover, the Court lends some
credence to Gleizer's contentions that he did not file the

instant petition immediately upon learning of the Ushuaia Case

in Spring 2018 because he believed that, with the Ushuaia Case

still pending in Argentina, his petition would be dismissed as

frivolous.    (Mot. at 5.)    Although Gleizer's conclusion was

perhaps incorrect as a legal matter, Gleizer's delay between

learning about his clients' settlement between February 22, 2018

and April 17, 2018, and filing suit approximately two months

after the Ushuaia Case was dismissed on September 5, 2018, was

not so unreasonable under the circumstances so as to amount to

waiver of his lien.

     The cases cited by the Republic do not compel a contrary

result.    In Hellerstein v. Hellerstein, 305 A.D.2d 211 (1st

Dep't 2003), for example, the attorney asserting a charging lien

was aware that "on April 16, 2001, an identifiable fund in the

form of the wife's half interest in [a retirement fund] had been

created as a result of [counsel]'s efforts . . . [but] counsel

did not restrain or otherwise assert her charging lien against

that fund until December 2001."    305 A.D.2d 211 at 212.    There,

the court found that "under the circumstances, [counsel]'s delay

in asserting her lien at or about the time of her discharge was

inconsistent with an intent to enforce it, and warranted its

subordination to" other claims on her client's assets."    Id. at

212.    Here, Plaintiffs never discharged Gleizer as counsel, and

Gleizer never withdrew from this case without asserting an

attorneys' fees lien, as counsel in <u>Hellerstein</u> did.   Further,

unlike <u>Hellerstein</u>'s counsel, who was clearly aware that her

client was entitled to funds at the time her client came into

that money, the record makes clear that Gleizer had no specific

confirmation from either his clients or the Republic that his

clients had obtained proceeds directly from the Republic at the

time they signed the MSA in February 2016.   In any case, the

<u>Hellerstein</u> court did not find that an eight-month delay

deprived counsel of the ability to enforce her lien.   To the

contrary, it found that the lien could still be enforced but was

subject to subordination based on competing claims for the

client's assets, <u>Hellerstein</u>, 305 A.D.2d at 212.   The Court is

not aware of any competing claims for the settlement proceeds

here.   Moreover, in <u>Petition of Harley & Browne</u>, 957 F. Supp. 44

(S.D.N.Y. 1997), the government informed counsel that it had

settled with his client on February 10, 1994, but counsel did

not attempt to enforce a charging lien against the government

and his former client until October 28, 1996.[4]   <u>Id.</u> at 49.   The

Republic's reliance on <u>Brettschneider v. City of New York</u>, No.

---

[4] Moreover, as the Republic acknowledges (Opp. at 20 n. 15), the
Court in <u>Harley & Brown</u> denied counsel's petition for the
independent reason that counsel had been discharged by his
client for cause, and "[i]t is well-settled that an attorney
loses his right to enforce a charging lien if the attorney
withdraws or is discharged for cause."   <u>Harley & Browne</u>, 957 F.
Supp. at 48 (citing <u>People v. Keeffe</u>, 50 N.Y.2d 149 (1980)).

15 Civ. 4574 (CBA) (SJB), 2020 WL 5984340 (E.D.N.Y. Aug. 25, 2020) is inapposite, as there the Court did not consider the merits of counsel's Section 475 application but, rather, the timeliness of counsel's motion to intervene. Id. at * 18.

To be sure, Gleizer's efforts to learn whether his clients had settled this matter with the Republic are hardly a masterclass in diligence. Although his conduct was not totally unreasonable under the circumstances, he could have made further inquiry after his February 2016 emails. However, Gleizer acted with some urgency to assert this lien after he learned of his clients' settlement with the Republic—a lien that both his clients and the Republic were aware of at the time they settled.[5] Accordingly, Gleizer's motion to enforce his lien for attorneys' fees pursuant to Section 475 is granted.

### B. Award Amount

In New York, "a discharged attorney may recover the fair and reasonable value of the services rendered, determined at the

---

[5] In their briefing, each side accuses the other of assorted violations of ethical or professional rules based on conduct that occurred years ago during the course of this litigation. (Mot. at 12-14; Opp. at 24; Reply at 11.)  These gripes are of little relevance to the instant dispute, and, moreover, "[t]he business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it." Giuffre v. Dershowitz, 515 F. Supp. 3d 123, 128 (S.D.N.Y. 2021) (quoting W.T. Grant Co. v. Haines, 531 F.2d 671, 677 (2d Cir. 1976)).

time of the discharge" and "[t]he theory of quantum meruit, rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien." Stair v. Calhoun, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010).  Such a calculation is not required, however, where, as here, the client never discharged the attorney.  "[W]here a client enters into a contingent fee agreement with an attorney, and subsequently, without discharging the attorney, settles the case directly with the defendant, the attorney may assert his statutory lien against the settlement proceeds, and collect the contracted-for percentage from that recovery."  Cook v. Moran Atl. Towing Corp., 79 F.R.D. 392, 395 (S.D.N.Y. 1978); see Ward v. Donovan, 235 N.Y. 240 (N.Y. 1923); Matter of Reisfeld, 227 N.Y. 137 (N.Y. 1919).

Gleizer has affixed to his declaration a copy of his retainer agreement with Plaintiffs, (Ex. 1 to Gleizer Decl. [dkt. no. 116-1]), which provides for a contingency fee of 30% of any recovery.  Because Gleizer had not been discharged by Plaintiffs prior to their settling with the Republic (or at any point), Gleizer is entitled to a charging lien in the amount of $207,000, 30% of the settlement amount of $690,000.  (See MSA at 6.)

### C. Default Judgment as to Plaintiffs

Gleizer additionally moves for entry of default judgment against Plaintiffs under Federal Rule of Civil Procedure 55 on the basis of Plaintiffs' failure to respond to his motion for fees.

As described above, Gleizer has established his entitlement to an enforceable attorneys' fees lien.  Section 475 allows an attorney to enforce a lien upon the proceeds from an asserted cause of action "in whatever hands they may come."  N.Y. Judiciary Law § 475.  The Court of Appeals observed that "the attorney may enforce his lien against a defendant who failed to provide for the attorney's fee."  Fontana, 962 F.3d at 675 (citing Sargent v. New York Cent. & H.R.R. Co., 209 N.Y. 360, 365 (1913)).  Here, the Court of Appeals observed that "the circumstances of this case permit Gleizer to assert his claim against Argentina and plaintiffs simultaneously."  Id. at 676 (2d Cir. 2020). Because the Court has determined Gleizer's application on the merits, and his lien may be enforced against both Plaintiffs and the Republic, it is not necessary for the Court to enter judgment against Plaintiffs by default.

Accordingly, Gleizer's motion for default judgment pursuant to Federal Rule of Civil Procedure 55 is denied as moot.

**IV.   Conclusion**

For the foregoing reasons, Gleizer's motion for an award of attorneys' fees pursuant to New York Judiciary Law § 475 is GRANTED, and his motion for entry of default judgment against Plaintiffs is DENIED as moot.

Gleizer shall submit a proposed final judgment no later than October 8, 2021.

The Clerk of Court is directed to close the open motion at docket entry 114.

**SO ORDERED.**

Dated:      New York, New York
            September 30, 2021

_Loretta A. Presley_
LORETTA A. PRESKA
Senior United States District Judge