UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HERNAN LOPEZ FONTANA, et al.,

                    Plaintiffs

          - against -

ARGENTINA REPUBLIC,

                    Defendant.

---

No. 03 Civ. 08531 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Zachary Meyer's, partner of Sutton Sachs Meyer PLLC ("SSM"),[1] (1) motion for attachment of $38,208.63 (the "Remaining Fee") currently held in SSM's escrow account, pursuant to Federal Rule of Civil Procedure ("FRCP") 64;[2] (2) motion for a preliminary injunction restraining the transfer of the Remaining Fee, pursuant to FRCP 65; and (3) motion to attach the Remaining Fee as a quasi-in-rem jurisdictional basis to commence an action in the "Courts of the State of New York" seeking payment of $12,634.32 (the "Outstanding Balance"), which allegedly stems from a separate case in this district, United States Sec. & Exch. Comm'n

---

[1] All references to SSM are to Mr. Meyer in his capacity as a partner of SSM.
[2] The Court has construed SSM's September 9, 2022 memorandum of law, (dkt. no. 155), as a motion for attachment. (See Court Order, dated Mar. 22, 2023 [dkt. no. 156].)

v. Collector's Coffee Inc., et al., No. 19 Civ. 04355 (VM)(GWG)
pursuant to FRCP 64.[3]  Guillermo Gleizer opposes SSM's motions.[4] [5]

Additionally, before the Court is Mr. Gleizer's request for an order to remove SSM as his counsel, which SSM opposes.[6]  Mr. Gleizer also filed a motion to recuse the Court from this case, which SSM opposes.[7]

---

[3] (See Zachary Meyer's Decl. in Support ("Meyer Decl."), dated Sept. 9, 2022 [dkt. no. 154]; Mem. of Law in Support of Mot. ("SSM Mem."), dated Sept. 9, 2022 [dkt. no. 155]; SSM's Reply Mem. of Law ("SSM Reply"), dated Apr. 24, 2023 [dkt. no. 159]; Meyer Reply Decl. ("Meyer Reply Decl. 1"), dated Apr. 24, 2023 [dkt. no. 160]; Meyer Supplemental Reply Decl. ("Meyer Reply Decl. 2"), dated May 2, 2023 [dkt. no. 161].)  The exhibit numbers cited in Mr. Meyer's declarations (Meyer Decl., Meyer Reply Decl. 1, and Meyer Reply Decl. 2) run continuously.

[4] (See Mr. Gleizer's Decl. in Opp'n ("Gleizer Opp'n"), dated Apr. 10, 2023 [dkt. no. 157]; Mr. Gleizer's Letter re Execution ("Gleizer Execution Letter"), dated Apr. 10, 2023 [dkt. no. 158].)

[5] The initial pre-motion letters that were filed on these issues include dkt. nos. 139-146, 150-51 and 153.

[6] The Court is construing Mr. Gleizer's application to amend the docket to reflect that SSM are not his attorneys as a request for an order to remove SSM as counsel.  (See Mr. Gleizer's Request for an Order to Remove Counsel ("Request to Remove Counsel"), dated Dec. 14, 2023 [dkt. no. 168]; SSM's Resp. to Mr. Gleizer's Request for an Order to Remove Counsel ("SSM Resp. to Request to Remove Counsel"), dated Dec. 18, 2023 [dkt. no. 170]; Mr. Gleizer's Reply to SSM ("Gleizer Reply re Remove Counsel"), dated Dec. 26, 2023 [dkt. no. 171].)  Additionally, from February to May 2024, Mr. Gleizer continued to file letters that SSM responded to.  (See dkt. nos. 172-74, 177-82.)

[7] (See Mr. Gleizer's Mot. for Recusal ("Gleizer Mot. to Recuse"), dated Nov. 17, 2024 [dkt. no. 184]; Mr. Gleizer's Decl. in Support of Mot. ("Gleizer Recusal Decl."), dated Nov. 17, 2024 [dkt. no. 185]; SSM's Decl. in Opp'n to Mot. for Recusal ("SSM Recusal Opp'n"), dated Nov. 19, 2024 [dkt. no. 187]; Mr. Gleizer's Decl. in Reply ("Gleizer Recusal Reply"), dated Dec. 1, 2024 [dkt. no. 188].)

For the reasons set out below, SSM's motion to attach the Remaining Fee is GRANTED.  SSM's motion for preliminary injunctive relief is held in abeyance pending updates from SSM and Mr. Gleizer.  SSM's motion to attach the Remaining Fee as a <u>quasi-in-rem</u> jurisdictional basis for a separate action is DENIED.  Mr. Gleizer's request for an order to remove SSM as counsel is GRANTED.  Mr. Gleizer's motion to recuse the Court is DENIED.

## I.  **Factual Background**

The Court assumes familiarity with the underlying facts of this case.  The motions currently before the Court arise from a dispute over attorney's fees between Mr. Gleizer and SSM (collectively, the "Parties").

### a. **Attorney's Fees Dispute**

Mr. Gleizer represented Hernan Lopez Fontana and Mariana Mori De Lopez (jointly, "Plaintiffs") in the above-captioned case against the Republic of Argentina ("Defendant").  The case dealt with defaulted Argentine bonds.  In 2016, Plaintiffs settled with Defendant pursuant to a master settlement agreement.  (<u>See</u> dkt. no. 116 Ex. 3.)  On October 28, 2018, Mr. Gleizer retained SSM as counsel to handle, <u>inter alia</u>, his attorney's fees dispute.  (Meyer Decl. Ex. 11 ("Engagement Letter") at 1-2.)  On November 9, 2018, SSM filed a notice of appearance.  (<u>See</u> dkt. no. 71.)

Pursuant to the Engagement Letter, Mr. Gleizer agreed to pay SSM a minimum of 18% of the net attorney's fees that it recovers

for him after repayment of expenses (the "Contingency Fee") and further agreed and acknowledged that all "Bondholder administrative processing costs and fees charged by . . . any foreign administrative representative shall be independent of the Contingency Fee. . . ." (Meyer Decl. Ex. 11 at 5.) However, pursuant to footnote one of the Engagement Letter, the Contingency Fee would increase up to 25% if "[Mr.] Gleizer undertakes to obtain substantial reduction in such Bondholder administrative processing costs and fees . . . and is successful in reducing such . . . costs and fees. . . ." (Id.) Additionally, under the Engagement Letter, Mr. Gleizer expressly granted SSM the "exclusive right to take any and all legal steps to . . . collect all outstanding attorneys' fees." (Id. at 4.) Further, the Engagement Letter specified that "foreign counsel may be necessary to execute the awards or judgments" and that "[Mr. Gleizer] expressly covenants to refrain from settling the Matters by circumventing [SSM], and in the event of such circumvention, [Mr. Gleizer] expressly agrees that [he] shall nonetheless be under the obligation to compensate [SSM] as set forth herein." (Id. at 4-5.)

On January 6, 2022, the Court issued a final judgment (the "Judgment") ordering that Mr. Gleizer shall recover $152,834.54 in attorney's fees jointly and severally from Plaintiffs. (See Judgment, dated Jan. 7, 2022 [dkt. no. 136].) On February 17,

4

2022, SSM informed Plaintiffs of the Judgment's entry and requested payment.  (<u>See</u> Meyer Decl. Ex. 2.)

On February 24, 2022, Mr. Gleizer emailed Plaintiffs' former Argentine counsel and was provided with a directory of Ushuaia lawyers who could help execute the Judgment abroad in Argentina. (<u>See</u> Meyer Decl. Ex. 3 at ECF 1.)  On March 7, 2022, Mr. Gleizer instructed SSM to email some of the Ushuaia lawyers to request legal assistance executing the Judgment abroad.  (<u>See</u> <u>id.</u> at ECF 15 ("I think it'd be better if the initial email goes out from your office email address.  I'd handle the eventual responses if the Ushuaia lawyer does not speak English.").)  Mr. Gleizer then independently interviewed a handful of the lawyers who responded, attached detailed notes about those interviews to SSM in an email— the body of which read "I'm ready to discuss and make a decision." (<u>See</u> <u>id.</u> at ECF 28-30.)  Carlos Hiriart was ultimately retained to execute the Judgment abroad.[8]  On April 15, 2022, Mr. Gleizer stated, in an email to Mr. Meyer, that he "got the Power with Retainer properly notarized and apostilled" and instructed SSM to get "the [J]udgment properly certified and apostilled" so that it could be sent "to our man in Ushuaia, Carlos [Hiriart]."  (<u>Id.</u> at ECF 30; <u>see also</u> Meyer Reply Decl. 1 Ex. 18 at ECF 22-23.)  On May

---

[8] The Parties disagree about whether Mr. Gleizer or SSM technically retained Mr. Hiriart.  (<u>See</u> Meyer's Decl. at 3 ¶ 10; Mr. Gleizer's Opp'n at 3.)

24, 2022, SSM obtained a certified apostilled copy of the Judgment and sent it to Mr. Gleizer, (see Meyer Decl. Ex. 4 at 1), who then on May 25, 2022, sent it to Mr. Hiriart, (see id. Ex. 3 at ECF 32).

On or about July 5, 2022, SSM received a partial settlement payment from Defendant into SSM's New York escrow account. (See dkt. no. 139 Ex. 3.) On July 5, 2022, SSM sent Mr. Gleizer an "Interim Closing Letter" breaking down the disbursement of the partial settlement payment - 25% to SSM for its contingency fee for the work relating to the settlement with Defendant and an additional 25% of the outstanding judgment secured against Plaintiffs as a holdback for the contingency fee Mr. Gleizer will owe SSM. (Id.) Mr. Gleizer replied to SSM with his own "Interim Closing Letter" calculating an 18% contingency fee for the work relating to the settlement with Defendant and a 10% contingency fee of the outstanding judgment secured against Plaintiffs, which implies that Mr. Gleizer wanted SSM to share its fee with Mr. Hiriart. (See Meyer Decl. Ex. 10 (The letter is undated.).) The letter also stated that the funds go "to the new escrow agent since [SSM has] become an interested party: The Victoria Law Group, Bob Arnold, Esq." (Id.) On July 7, 2022, Mr. Gleizer demanded that SSM transfer the escrow funds to a law firm in Southeast Florida. (See Meyer Decl. Ex. 9; but see dkt. no. 146 (Mr. Gleizer writes to the Court on July 17, 2022 stating, "I have proposed Bob Arnold,

6

Esq., a reputable Florida attorney.  It would be as good [as] the Court's registry or a New York attorney who will accept the task explicitly, appointed by the Court or otherwise.").)  On July 11, 2022, SSM attempted to disburse $113,395.81 to Mr. Gleizer, but retained $57,423.66 representing SSM's contingency fee with respect to Defendant and $38,208.63 as security for its contignecy fee pending execution of the Judgment against Plaintiffs.  (See dkt. no. 139 Exs. 3, 6; see also dkt. no. 142; dkt. no. 142 Ex. 1.)

Additionally, SSM alleges that at some point in July 2022 Mr. Gleizer stated that "SSM will never see a penny of the funds flowing from the Judgment."  (Meyer Decl. ¶ 20.)

Thereafter, from July 11 to 17, 2022, the Parties filed numerous letters regarding whether 18% or 25% was the correct Contingency Fee under the Engagement Letter.  (See dkt. nos. 139-146; see also Meyer Decl. Ex. 11.)  On July 20, 2022, the Court ordered that the Parties appear for a telephone conference on July 25, 2022.  (See dkt. no. 147.)

After the conference, on August 5, 2022, the Court ordered that the Engagement Letter mandated a 25% contingency fee.  (See dkt. no. 149.)  As such, the Remaining Fee was to stay "in SSM's escrow account pending further briefing and updates on Judgment execution efforts against Plaintiffs within the Republic."  (See id.)  The order instructed Mr. Gleizer to submit briefing by August

19, 2022, and SSM to submit its briefing by September 9, 2022. (See id.)

Following the order, on July 26, 2022, Mr. Gleizer executed the "First Amended Interim Closing Statement" authorizing the Remaining Fee to stay in SSM's escrow account.[9]  (See Meyer's Decl. Ex. 6.)  On July 27, 2022, the remainder of the partial settlement payment was disbursed to Mr. Gleizer.  (See id. Ex. 7.)

On August 3 and 25, 2022, Mr. Gleizer terminated SSM as his counsel through email.  (See Meyer Decl. Ex. 12 (The numbers in the subject line, "Re: Retainer Agreement dated October 28, 2018[;] SSM Client File No. 10208-B(24)[,]" correspond to "Lopez Fontana, Hernan and Mori de Lopez, Mariana" on the Engagement Letter, see Meyer Decl. Ex. 11); see also dkt. no. 145 (Mr. Gleizer writes to the Court on July 15, 2022 stating, "After all, SSM has not yet acknowledged that they are in an adversarial position with respect to me and ceased to be my lawyers."); but see Gleizer Execution Letter at 1-2 (Mr. Gleizer writes to the Court on April 10, 2023 stating that SSM has the "'exclusive right' to collect" the Judgment and that he "did not fire [SSM] for the recovery in Lopez Fontana" but just "fired SSM for lack of prosecution against [his]

---

[9] Although the Court's written order is dated August 5, 2022, the Court provided the Parties with directions during the July 25, 2022 telephone conference, which is why Mr. Gleizer executed the closing statement on the same day of the conference.

other 41 clients because [SSM] did basically nothing for over 3 and ½ years."); Gleizer Opp'n at ECF 8 n. 8.)

On August 16, 2022, Mr. Gleizer submitted a brief arguing that, inter alia, SSM's motion setting forth the basis for its retention of the Remaining Fee was insufficient and did not provide him with proper notice. (See dkt. no. 150 at 3, 11.) Mr. Gleizer did not update the Court about whether execution occurred. (See generally id.)

In late August 2022, SSM approached Patricia Rosito Vago to facilitate a docket inspection in Ushuaia to ascertain what actions Mr. Hiriart has undertaken abroad in furtherance of the Judgment. (Meyers Decl. ¶¶ 23-25.) SSM claims that it was locked out of all updates as to the Judgment execution progress. (SSM Mem. at 9; Meyer Decl. ¶ 21; but see Gleizer Execution Letter at 1 ("SSM has also advised [him] that it believes that Ms. Vago is an excellent attorney to be [his] local co-counsel and that she has been and is in contact with Mr. Hiriart. [SSM] did not tell [him] to what extent [Ms. Vago and Mr. Hiriart] are working together or whether she is working by herself. SSM, having the 'exclusive right' to collect, would have been working with Ms. Vago and/or Mr. Hiriart or both in the Judgment execution efforts.").) SSM told the Court that SSM would update the Court when the results of such docket inspection were delivered, which at the time was expected within the month. (Meyers Decl. ¶ 25.)

Additionally, SSM alleges that on September 2, 2022, Mr. Gleizer called SSM and threatened a legal malpractice suit regarding SSM's failure to litigate the other case numbers mentioned in the Engagement Letter. (Meyer Decl. ¶ 28.) Furthermore, in late 2022, Mr. Gleizer filed multiple disciplinary grievances, commenced a fee arbitration, and commenced a plenary litigation in Florida. (See Gleizer Opp'n Exs. 1-5.)

On September 9, 2022, SSM responded arguing that attachment was proper under FRCP 64 and additionally requested injunctive relief under FRCP 65 and an order granting quasi-in-rem jurisdictional attachment over the Remaining Fee. (See SSM Mem. at 1; see also dkt. no. 156.) On March 22, 2023, the Court stated that it construed SSM's September 9, 2022 memorandum of law, (dkt. no. 155), as a motion for attachment and other relief. (Dkt. no. 156.) The Court ordered that, by April 12, 2023, Mr. Gleizer submit his opposition and update the Court regarding the status of the execution of the Court's January 6, 2022 judgment and that, by April 26, 2023, SSM submit its reply. (Id.) The parties followed the Court's order.

Notably, in Mr. Gleizer's April 10, 2023 filing, he stated that as of February 2023, the "local judicial action has not been commenced yet." (Gleizer Execution Letter at 2; see also Gleizer Opp'n at ECF 5 n. 4.) Contradictorily, however, on April 24, 2023, SSM informed the Court that Ms. Vago's docket inspection revealed

that execution efforts had been proceeding in Ushuaia since February 2023.  (See SSM's Reply Decl. Ex. 18 at ECF 3-10.)  The Court is unaware of the current status of the Judgment execution efforts.

### b. Request to Remove Counsel and Motion for Recusal

On December 14, 2023, Mr. Gleizer sent the Court a letter requesting amendment of the docket to reflect that the individuals at SSM are no longer his attorneys.  (See Request to Remove Counsel.)  Mr. Gleizer claims that he instructed SSM to withdraw as counsel and they failed to do so.  (See id. at 3.)  On December 18, 2023, SSM timely responded to Mr. Gleizer's letter pursuant to the Court's December 18, 2023 order directing it to do so.  (See SSM Resp. to Request to Remove Counsel.)  On December 26, 2023, Mr. Gleizer replied.  (See Gleizer Reply re Remove Counsel.)  Thereafter from February to May 2024, the Parties sent nine additional letters to the Court regarding the pending applications before the Court.  (See supra n.7.)

On November 17, 2024, Mr. Gleizer filed a motion for the Court's recusal.  (See Gleizer Mot. to Recuse; Gleizer Recusal Decl.)  On November 19, 2024, SSM responded.  (SSM Recusal Opp'n.)  On December 1, 2024, Mr. Gleizer replied.  (Gleizer Recusal Reply.)

### c. Outstanding Balance in a Separate Case

SSM's motion also requests that the Court issue an order of attachment over the Remaining Fee as a quasi-in-rem jurisdictional

basis to commence an action in "Courts of the State of New York" seeking Mr. Gleizer's payment of the Outstanding Balance. (See SSM Mem. at 16.) The Outstanding Balance allegedly accrued through services SSM rendered for Mr. Gleizer in a separate matter in this district, Collector's Coffee Inc., No. 19 Civ. 04355 (VM) (GWG). (Meyer Decl. Ex. 13; but see dkt. nos. 140, 143 (Mr. Gleizer disputes, inter alia, the legitimacy of the invoices.).) SSM states that Mr. Gleizer was performing legal services in the matter as assigned counsel for an insurance carrier and retained SSM as associate counsel. (See Meyer Decl. ¶¶ 29-30.) SSM did not execute an engagement letter with Mr. Gleizer, but Mr. Gleizer provided oral assurances that SSM would be timely paid. (See id. ¶ 31) The insurance carrier paid all legal fees to Mr. Gleizer and his partner. (See id. ¶ 30.) For some time, Mr. Gleizer tendered payments on the invoices to SSM but failed to pay the full amount due. (See id. ¶ 33.) As such, despite reimbursement from the insurance carrier, Mr. Gleizer has failed to pay SSM for the full services it rendered as associate counsel. (See id.)

## II. **Applicable Law**

### a. Attachment

FRCP 64 "permits federal litigants to seek an order of attachment to secure satisfaction of a potential judgment in accordance with the laws of the state in which the district court sits." Telebrands Corp. v. Guangzhou Alpaca Home Furnishing Co.,

Ltd., No. 25 Civ. 3646 (JAV), 2025 WL 1591970, at *9 (S.D.N.Y. June 5, 2025).  As such, New York law governs orders of attachment in this Court.[10]

A movant seeking attachment must make his or her showing via affidavit or other written evidence.  C.P.L.R. § 6212(a).  Under Section 6212 of the New York Civil Practice Law and Rules ("CPLR"), pre-judgment[11] attachment is available when

> (1) the plaintiff has a cause of action for a money judgment; (2) it is probable that the plaintiff's claim will succeed on the merits; (3) one of more grounds for attachment provided under [CPLR § 6201] exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

Owens v. Taliban, No. 22 Civ. 1949 (VEC), 2022 WL 1090618, at *2 (S.D.N.Y. Mar. 11, 2022) (citing C.P.L.R. § 6212(a)); see also Bank of Leumi Trust Co. of N.Y. v. Istim, Inc., 892 F. Supp. 478, 481 (S.D.N.Y. 1995).

---

[10] Pursuant to CPLR § 6202, debt or property subject to attachment includes any "debt or property which a money judgment may be enforced as provided in CPLR [S]ection 5201."  N.Y. C.P.L.R. § 6202.  Section 5201 specifies that "a money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested."  Id. § 5201(b) (emphasis added).

[11] In SSM's reply, SSM requests that the Court "issue a judgment in favor of SSM and against Gleizer in the amount of no less than $50,842.95" and additional damages of $3,290, which represents Ms. Vago's Ushuaia docket inspection fee.  (See SSM Reply at 10; Meyer Reply Decl. 2 at 2-3.)  Because these arguments only first appear in SSM's reply and the Court set out in its March 22, 2023 order that SSM's motion will be treated as a motion for attachment, (dkt. no. 156), SSM's arguments for judgment and additional damages are premature, and the Court need not address them at this time.

CPLR Section 6201 provides that an order of attachment may be granted where the movant seeks a money judgment, and where:

> the defendant is a nondomiciliary residing without the state . . . or [] the defendant, with intent to . . . frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts[.]

C.P.L.R. § 6201(1), (3).

Pre-judgment attachment "is discretionary with the Court and should be used sparingly." Katz Agency, Inc. v. Evening News Ass'n, 514 F. Supp. 423, 429 (S.D.N.Y. 1981), aff'd sub nom. Katz Commc'ns, Inc. v. Evening News Ass'n, 705 F.2d 20 (2d Cir. 1983) (citation omitted). The moving party must satisfy a high burden to establish grounds for attachment. Buy This, Inc. v. MCI Worldcom Commc'ns, Inc., 178 F. Supp. 2d 380, 383 (S.D.N.Y. 2001) (New York "attachment statutes are construed strictly against those who seek to invoke the remedy."); see also In re Amaranth Nat. Gas Commodities Litig., 711 F. Supp. 2d 301, 305 n.1 (S.D.N.Y. 2010) (citing Intelligent Dig. Sys., LLC v. Visual Mgmt. Sys., Inc., 683 F. Supp. 2d 278, 287 (E.D.N.Y. 2010) (noting that the standard for proving probability of success is "akin to that required to obtain injunctive relief")).

Further, because attachment is a harsh remedy, even if the movant satisfies the four prongs, discretion remains with the Court. See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l

Dev. & Trade Servs., Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004). "Where, however, a statutory ground for attachment exists and both need and likelihood of success are established, [a district court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances." Cap. Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 222 (2d Cir. 2006). But see Musket Corp. v. PDVSA Petroleo, S.A., 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) ("Satisfaction of the statutory criteria [] does not guarantee that a court will issue such a relief. '[S]uch relief is discretionary, and since attachment is a harsh remedy, the court must exercise care in its application.'") (quoting Signal Cap. Corp. v. Frank, 895 F. Supp. 62, 64 (S.D.N.Y. 1995)).

### i. Total Breach

As discussed infra III.b.i, SSM's asserted cause of action is total breach stemming from repudiation. Pursuant to New York common law

> [a] party's repudiation . . . of its future obligations under
> a bilateral contract . . . may take the form either of 'a
> statement by the obligor to the obligee indicating that the
> obligor will commit a breach that would of itself give the
> obligee a claim for damages for total breach'

or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." Merrill Lynch Int'l v. XL Cap. Assurance Inc., 564 F. Supp. 2d 298, 303 (S.D.N.Y. 2008) (citation omitted). In New York, "a [non-

repudiating] party to a contract . . . is entitled to damages for total breach if (1) the other party repudiates her duties under the contract . . . (2) before the time designated for the repudiating party's performance, and (3) before the repudiating party has received all of the consideration, she is due under the contract." Nash v. The New Sch., No. 05 Civ. 7174 (KMW) (FM), 2009 WL 1159166, at *6 (S.D.N.Y. Apr. 29, 2009).

### b. Preliminary Injunction

A party seeking a preliminary injunction must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (citations omitted). Additionally, the Supreme Court and the Court of Appeals have instructed courts to assess the extent that "the injunction serves the public interest." SAM Party of New York v. Kosinski, 987 F.3d 267, 273–74 (2d Cir. 2021) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

### c. Attachment as Quasi-in-rem Jurisdiction

Attachment can also be used to provide a basis for quasi-in-rem jurisdiction over a defendant "with tangible or intangible property in the state." Hotel 71 Mezz Lender LLC v. Falor, 14

N.Y.3d 303, 311 (2010) (citations omitted).  However, "this quasi-in-rem jurisdiction is subject to the due process restrictions outlined by the United States Supreme Court in Shaffer v. Heitner, 433 U.S. 186 (1977)."  Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 538 (2009) (citing David. D. Siegel, New York Practice §§ 104, 313, 314 (4th ed. 2005)).  Shaffer held that the "minimum contacts analysis" from International Shoe Co. v. Washington, 326 U.S. 310 (1945), "is applicable to actions involving quasi-in-rem . . . jurisdiction."  Banco Ambrosiano, S.P.A. v. Artoc Bank & Tr. Ltd., 62 N.Y.2d 65, 71 (1984).

Hence, in addition to the statutory requirements for attachment set forth under CPLR Sections 6212 and 6201, supra Section II.a, "where the only basis of jurisdiction is the property sought to be attached, such property must have a relationship to the cause of action in order to provide the court with quasi-in-rem jurisdiction."  Silvestre v. De Loaiza, 820 N.Y.S.2d 440, 443 (N.Y. Sup. Ct. 2006).

### d. Request to Remove Counsel

Rule 1.4 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York governs the displacement of counsel who have appeared.  S.D.N.Y. Local R. 1.4(b) ("An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court

. . . only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement.")

Further, the New York Rules of Professional Conduct ("NYRPC") "govern the conduct of attorneys in federal courts sitting in New York." Steele v. Bell, No. 11 Civ. 9343 (RA), 2012 WL 664191, at *2 n.1 (S.D.N.Y. Dec. 19, 2012) (citation omitted).  The NYRPC divides bases for withdrawal into mandatory and permissive categories.  Compare NYRPC Rule 1.16(b), with NYRPC Rule 1.16(c). Specifically, NYRPC 1.16(b) outlines when withdrawal is mandatory and requires a lawyer to withdraw from representation when "the lawyer is discharged."  NYRPC Rule 1.16(b)(3).

### e. Motion for Recusal

The Court notes that Mr. Gleizer is a former attorney proceeding pro se.  Ordinarily, a court is "obligated to afford a special solicitude to pro se litigants," but courts in this district "have developed a practice of withdrawing [the special solicitude] if a pro se litigant is deemed to have become generally experienced in litigation." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (citations omitted).  As Mr. Gleizer is an experienced attorney, the Court will not afford him "special solicitude."

While Mr. Gleizer's motion to recuse the Court does not explicitly cite what statute he is seeking recusal under, the Court will construe Mr. Gleizer's motion as seeking recusal under the

applicable federal statutes of 28 U.S.C. § 144 ("Section 144") and 28 U.S.C. § 455 ("Section 455").

### i. 28 U.S.C. § 144

A Section 144 recusal analysis is initiated upon the filing of a party's affidavit. 28 U.S.C. § 144. Specifically, Section 144 provides that a judge should recuse him- or herself when a party has filed a "timely and sufficient affidavit" demonstrating that the judge has "a personal bias or prejudice" either against the party or in favor of an adverse party. Id.

The standard for a legally sufficient affidavit under Section 144 requires that it "must show the objectionable inclination or disposition of the judge; it must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." Rosen v. Sugarman, 357 F.2d 794, 798 (2d Cir. 1966) (quoting Berger v. United States, 255 U.S. 22, 33-35 (1921)). Additionally, the Court must "strictly scrutinize[]" the affidavit's form, and a deficiency in form alone can provide grounds for denial. Lamborn v. Dittmer, 726 F. Supp. 510, 514-15 (S.D.N.Y. 1989) (citation omitted); see also Brawer v. United States, 462 F. Supp. 739, 744 (S.D.N.Y. 1978). Section 144 requires that an affidavit is "accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144.

The "mere filing of an affidavit of prejudice does not require a judge to recuse," Nat'l Auto Brokers Corp. v. General Motors Corp., 572 F.2d 953, 958 (2d Cir. 1978), and a judge must review the facts included in the affidavit for legal sufficiency. Rosen, 357 F.2d at 797.

### ii. 28 U.S.C. § 455

Section 455 "creates an independent duty requiring federal judges to evaluate in every case whether they should disqualify themselves." In re Initial Pub. Offering Secs. Litig., 174 F. Supp. 2d 70, 74-75 (S.D.N.Y. 2001) (citations omitted).  It provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party."  28 U.S.C. §§ 455(a), (b)(1).  The purpose of these provisions is to "promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865 (1988).  The standard is: "would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992) (citing Deluca v. Long Island Lighting Co., 862 F.2d 427, 428-29 (2d Cir. 1988)).  Section 455 does not "compel disqualification 'simply on unfounded innuendo concerning the

possible partiality of the presiding judge.'" <u>Canino v. Barclays</u> <u>Bank, PLC</u>, No. 94 Civ. 6313 (SAS), 1998 WL 7219, at *3 (S.D.N.Y. Jan. 7, 1998) (citation omitted).

### III. <u>Discussion</u>

#### a. Preliminary Matters

As a preliminary matter, Mr. Gleizer argues that the Engagement Letter's forum selection clause "contractually constrained" SSM to bring any dispute thereunder in the Supreme Court of the State of New York. (<u>See</u> Gleizer Opp'n at 10; Meyer Decl. Ex. 11 at 6.) However, this Court's November 14, 2018 order retained jurisdiction "to adjudicate collateral matters in this action such as attorneys' fees." (<u>See</u> dkt. no. 74.) Further, the Engagement Letter's forum selection clause does not "oust" this Court of its subject matter jurisdiction. <u>M/S Bremen v. Zapata</u> <u>Off-Shore Co.</u>, 407 U.S. 1, 12 (1972) ("The argument that [forum selection] clauses . . . tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction."); <u>see</u> <u>New Moon</u> <u>Shipping Co. v. MAN B & W Diesel AG</u>, 121 F.3d 24 (2d Cir. 1997) (holding that it was an error to dismiss a case for lack of subject matter jurisdiction based on forum selection clause).

Additionally, Mr. Gleizer argues that because SSM is not a named plaintiff in the above captioned matter, it may not seek attachment under New York law. (<u>See</u> Gleizer's Opp'n at 5.) However, the Court retained jurisdiction to adjudicate collateral

matters, which demonstrates an exercise of ancillary jurisdiction. (Dkt. no. 74.)   See Hendrickson v. United States, 791 F.3d 354, 358 (2d Cir. 2015) ("[A]ncillary jurisdiction . . . allows a district court to decide matters that are factually interdependent with another matter before the court.") (internal quotation marks and citations omitted); In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003) ("Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees"); Mason v. City of New York, No. 13 Civ. 7139 (PKC), 2016 WL 2766652, at *2 (S.D.N.Y. May 12, 2016) (exercising ancillary jurisdiction to adjudicate fee dispute between attorneys).   Accordingly, Mr. Gleizer's preliminary arguments fail.

### b. Attachment

As set out below, SSM has satisfied all four prongs necessary to obtain an order of attachment under New York law and demonstrated a need for attachment.   Accordingly, SSM's motion for attachment is GRANTED.

### i. Total Breach[12]

To succeed on a motion for attachment, a movant must first state a cause of action.  N.Y. C.P.L.R. § 6212(a).  Here, SSM asserts a claim of total breach against Mr. Gleizer as a result of his Engagement Letter fee obligation repudiations.  (See SSM Mem. at 7-10.)

To assess whether a party has stated a cause of action for attachment, the Court would ordinarily look at the pleading; however, SSM has not filed a pleading.  Nonetheless, SSM's affidavits and papers submitted in support of its motion for attachment detail the existence of a cause of action for money damages by alleging that Mr. Gleizer has: (1) prevented SSM from receiving updates about the Judgment collection efforts abroad, (2) attempted to evade fee obligations under the contract by forcing SSM to split the fee with foreign counsel and firing SSM without cause.  (Id.)

The Court finds SSM's submissions sufficient to find that SSM has stated a cause of action that, "were [it] to succeed, would result in a money judgment."  Owens, 2022 WL 1090618, at *3; see Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni, No. 15 Civ. 9003, 2018 WL 6340600, at *1 (S.D.N.Y. July 23, 2018) (finding

---

[12] Aside from total breach, SSM also claims breach of the implied covenant of good faith and fair dealing and unjust enrichment. (SSM Mem. at 7-10.)

cause of action in case bringing breach of contract claim); Lucente v. Int'l Bus. Mach. Corp., 146 F. Supp. 2d 298, 308-09 (S.D.N.Y. 2001). Accordingly, SSM satisfied the first prong for attachment under New York law, but SSM shall file a pleading stating its cause of action for breach of contract against Mr. Gleizer within 30 days of this order.

### ii. Likelihood of Success on the Merits

To satisfy the second prong, SSM must demonstrate that "it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." Musket Corp., 512 F. Supp. 2d at 160 (citations omitted). When determining likelihood of success on the merits, "all legitimate inferences should be drawn in favor of the party seeking the attachment." JSC Foreign, 306 F. Supp. 2d at 485 (citing Bank of Leumi, 892 F. Supp. at 482). Moreover, in assessing the likelihood of success on the merits, courts may rely on hearsay evidence. Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir. 2010). In fact, courts have routinely done so when evaluating motions for provisional relief. See Fratelli Italiani LLC v. Mironova, 2019 WL 3759160 (CM), at *10 (S.D.N.Y. Apr. 11, 2019) (asserting that "evidence need not be admissible at trial to be considered on a motion for provisional relief"); CF 135 Flat LLC v. Triadou SPV N.A., 2016 WL 5945912 (AJN), at *2 n.3 (S.D.N.Y. June 24, 2016)

(relying on a foreign judgment as evidence of fraud to award attachment to plaintiff).

SSM asserts total breach against Mr. Gleizer as a result of his repudiations of the fee obligations set forth in the Engagement Letter.  (See SSM Mem. at 7-8.)  A non-repudiating party is entitled to damages for total breach under New York law when: (1) a party to a contract repudiates his or her duties under the contract; (2) the repudiation occurs before the repudiating party's performance is due; and (3) the repudiation occurs before the repudiating party has received all of the consideration due under the contract.  See Nash, 2009 WL 1159166, at *6.  A passive statement is not enough as "'there must be a definite and final communication of the intention to forego performance . . . [m]ere expression of difficulty in tendering the required performance, for example, is not tantamount to a renunciation of the contract.'" Saewitz v. Epstein, 6 F. Supp. 2d 151, 156 (S.D.N.Y. 1998) (quoting Rachmani Corp. v. 9 E. 96th St. Apartment Corp., N.Y.S.2d 382, 385 (1st Dep't 1995) (citations omitted)).

Upon repudiation, the injured party may elect to: (1) claim breach "by bringing suit or by making some change of position;" (2) rescind the contract and recover the value of performance rendered by the injured party; or (3) "bring suit after th[e] time [for performance] has arrived." Lucente v. Int'l Bus. Mach. Corp., 146 F. Supp. 2d 298, 308-09 (S.D.N.Y. 2001).

Here, SSM has claimed total breach[13] and filed its motion for attachment.  SSM argues that the following actions, <u>inter alia</u>, amount to repudiation: (1) Mr. Gleizer's statement on July 5, 2022 that "SSM will never see a penny of the funds flowing from the Judgment;" and (2) Mr. Gleizer's counterproposal to SSM's interim closing statement, (dkt. no. 139-3), rejecting the 25% fee obligations and attempting to divide SSM's fee with Mr. Hiriart. (<u>See</u> Meyer Decl. at 5.)  Mr. Gleizer's alleged statement on July 5 likely demonstrates a positive and unequivocal announcement of his intent not to perform.  <u>Cf.</u> <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 112 (2d Cir. 2010) (citations omitted) (holding that general discussion of departure from employment does not constitute unequivocal repudiation as a matter of law).  Similarly, Mr. Gleizer's counterproposal to SSM's closing statement "attempt[s] to advance an unwarranted interpretation of the contract" by stating the Engagement Letter fee is to be negotiated. <u>In re Best Payphones, Inc.</u>, 432 B.R. 46, 54 (S.D.N.Y. 2010), <u>aff'd</u>, 450 F. App'x 8 (2d Cir. 2011) (citation omitted).  These actions in conjunction with SSM's allegation that it is locked out of all updates as to the Judgment execution progress abroad, (SSM Mem. at 9; Meyer Decl. ¶ 21; <u>but see</u> Gleizer Execution Letter at 1), likely amount to total breach.

---

[13] As noted above, <u>see</u> <u>supra</u> Section III.b.i., SSM shall plead its cause of action within 30 days of this order.

SSM has demonstrated that Mr. Gleizer explicitly agreed to the terms of the Engagement Letter and, thereafter, undertook voluntary, affirmative acts which rendered him unable to perform without a breach.  As such, SSM has demonstrated that its "'probability of . . . prevailing [on the merits] is better than fifty percent' to demonstrate a likelihood of success on the merits." Gluco Perfect, LLC v. Perfect Gluco Prod., Inc., 2014 WL 4966102, at *17 (E.D.N.Y. Oct. 3, 2014) (citing Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988)).  Accordingly, the second prong for attachment is satisfied.

### iii. Grounds for Attachment

The third requirement for attachment is a showing that grounds for attachment exist.  N.Y. C.P.L.R. § 6212.  SSM relies on CPLR § 6201(1), which provides for attachment where "the defendant is a nondomiciliary residing without the state" and, in the alternative, CPLR § 6201(3), which provides that attachment is warranted when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts."  N.Y. C.P.L.R. §§ 6201(1), (3).

### 1. CPLR § 6201(1)

The residency test under Section 6201(1) should be interpreted in a practical way "to protect the plaintiff against

27

defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedures." ITC Entm't, Ltd. v. Nelson Film Partners, 714 F.2d 217, 221 (2d Cir. 1983). For purposes of attachment, domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998) (internal quotation marks omitted).

Under this practical test, Mr. Gleizer is a nondomiciliary of New York. First, Mr. Gleizer admits in a July 8, 2022 email that: (i) he is "no longer in New York and indeed [SSM] visited [him] in Florida;" (ii) he hasn't been in New York since "several years ago;" and (iii) that he "need[s] to spend time in Italy." (Meyer Decl. Ex. 8 at ECF 2; see also SSM Reply Decl. Ex. 18 at ECF 3, 22 (noting that Mr. Gleizer resides at an address in Italy).) Second, Mr. Gleizer signed many of his correspondence with SSM, submissions to this Court, and a dissolution petition with "his known [Miami Beach], Florida address." (SSM Reply at 9; see, e.g., Meyer Decl. Ex. 10; dkt. no. 168.) Lastly, Mr. Gleizer's opposition does not dispute SSM's contention that Mr. Gleizer is a nondomiciliary of New York.[14] (See dkt. no. 150 at 9 ("Gleizer is a US citizen,

---

[14] However, Mr. Gleizer disputes his residency in his pre-motion letter (dkt. no. 140) when he states that SSM's statement (cont'd)

resides in Miami Beach and has offices in New York City.").)  And, the fact that Mr. Gleizer signed his opposition briefing with a New York address is of no significance to the Court's determination because the address, 347 Fifth Avenue, Suite 1402, New York, is a known virtual office space.[15]  (See Gleizer Opp'n at 10; see Meyer Decl. Ex. 14.)  Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) (asserting domicile requires physical presence in a place).

The aforementioned establish that Mr. Gleizer abandoned his New York domicile, he is in Florida and/or Rome, and he has no present intention of returning to New York.  See Palazzo ex rel Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) (noting that change of domicile requires a new domicile and intention to remain there).  Accordingly, grounds for attachment exist under § 6201(1) because Mr. Gleizer is a nondomiciliary residing outside the state.  Therefore, the Court need not address the parties' arguments with respect to § 6201(3).

_____

(cont'd) that "Gleizer is a foreign national" is a "discriminatory, unlawful, invidious and odious statement [that] also happens to be an example of SSM's disregard for the due respect to this Court in that it is a false statement of fact proffered to the tribunal with only negative reasons to do so."  (Dkt. no. 140 at 1; see also dkt. no. 143 at 1.)

[15]  https://www.davincivirtual.com/loc/us/new-york-cirty-virtual-offices/facility-1345>.

### iv. Counterclaims

The final statutory requirement for attachment under CPLR § 6212, requires SSM to show that the damages claimed exceed any counterclaims.  N.Y. C.P.L.R. § 6212(a).  This requirement is "satisfied by a statement that the sum claimed from defendants is due over and above all counterclaims which plaintiffs are willing to concede as just."  Freedman v. Wilson Sec. Corp., 31 A.D.2d 627, 628 (N.Y. 1st Dep't 1968).  Notably, the Court only examines "the amount of the counterclaims that the [movant] concedes are just."  Bank of Leumi, 892 F. Supp. at 482 (emphasis removed). Further, "the existence of disputed counterclaims does not defeat an attachment."  Burt Printing Co. v. Middle East Media Corp., 80 F.R.D. 449, 451 (S.D.N.Y. 1978) (citations omitted).  Although Mr. Gleizer represents that his counterclaims amount to $1,000,000, (see Gleizer Opp'n at ECF 8), SSM does not concede to any counterclaims and states that the amount it demands of Mr. Gleizer far exceeds any potential counterclaims.  (SSM Mem. at 11.) Therefore, the final statutory requirement for attachment is satisfied.

### v. Need for Attachment

Even if a movant satisfies all four statutory requirements for attachment under CPLR § 6201, the outcome remains within the sound discretion of the Court, and the Court should glean from the movant's papers a need for attachment.  See Cap. Ventures Int'l,

443 F.3d at 221 (citing David. D. Siegel, New York Practice § 317 (4th ed. 2005)).  Here, the Court finds such a need for attachment.

SSM has demonstrated that attachment of the Remaining Fee is necessary to secure payment because without it there is "a real risk to the enforceability of a future judgment." Ames v. Clifford, 863 F. Supp. 175, 177 (S.D.N.Y. 1994) (citations omitted).  Accordingly, the Court concludes that there is a sufficient need for attachment here, and SSM's Motion to attach the Remaining Fee is GRANTED.

### vi. Undertaking

A party that seeks attachment "shall give an undertaking, in a total amount fixed by the court, but not less than [$500]." N.Y. C.P.L.R. § 6212(b).  An undertaking ultimately acts as a security to cover any costs or damages in the event that the defendant recovers judgment, or the attachment was wrongfully granted.  See id.  Here, based on the likelihood of success of SSM's claim, the minimal risk of harm to Mr. Gleizer, and precedent calculating the undertaking as a small percentage of the attachment itself, the Court concludes that $1,500-approximately 0.4% of the attachment- is sufficient.  See, e.g., In re Amarnath Nat. Gas Commodities Litig., 711 F. Supp. 2d 301, 313 (S.D.N.Y. 2010) (ordering plaintiff to post an undertaking of $250,000-approximately 0.35% of the $72.4 million attachment); OSRecovery, Inc. v. One Groupe Int'l, Inc., 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004) (setting

31

undertaking of $100,000 for a $250 million attachment of assets-0.04% of the attachment); <u>N.Y. Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.</u>, No. 07 Civ. 8008 (RJS), 2008 WL 2115225, at *6 (S.D.N.Y. May 16, 2008) (requiring a $50,000 undertaking for an attachment of approximately $1.1 million attachment-4.5%).

### c. Preliminary Injunction

Regarding SSM's request for a preliminary injunction restraining the transfer of the Remaining Fee, it is unclear whether the parties' dispute is about (a) who holds the Remaining Fee in escrow or (b) whether the Remaining Fee should be held in escrow at all.  The parties shall update the Court, by letter, on their positions within 30 days of this order.

### d. Attachment as <u>Quasi-in-rem</u> Jurisdiction

Regarding SSM's request to attach the Remaining Fee as a <u>quasi-in-rem</u> jurisdictional basis to commence an action in the "Courts of the State of New York," it is unclear whether SSM means a state court, a federal court, or this Court when SSM states "Courts of the State of New York."  (<u>See</u> SSM Mem. at 16.)  SSM's pre-motion letter, (dkt. no. 141), states "this firm <u>does not seek to litigate the entitlement to payment under the outstanding invoices before this Court</u>, but rather seeks an Order of Attachment as a <u>quasi-in-rem</u> jurisdictional predicate for which to secure independent relief <u>in another forum</u>."  (Dkt. no. 141 at 3 (emphasis added).)  SSM has not provided the Court with any precedent for

this Court to determine whether a state court or other federal court has jurisdiction over a matter that has not even been brought. Additionally, it is unclear why SSM is not seeking to litigate the fee dispute in the underlying case where the fee dispute arose, U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc., et al., No. 19 Civ. 04355 (VM)(GWG).

Even if this Court could establish quasi-in-rem jurisdiction for another state court or federal court, SSM fails to demonstrate that the Remaining Fee would be sufficiently related to the plenary action that SSM plans to bring against Mr. Gleizer to satisfy a potential judgment against Mr. Gleizer for the Outstanding Balance for services rendered in the separate matter upon the theories of account stated, unjust enrichment, and quantum meruit. Therefore, because SSM does not assert other jurisdictional grounds—like minimum contacts with the State—other than the Remaining Fee to be attached, its motion for attachment to establish quasi-in-rem jurisdiction for a plenary action is DENIED. Silvestre, 820 N.Y.S.2d at 442 (citing Shaffer, 443 U.S. at 213).

### e. Request to Remove Counsel

A client has an "absolute right to terminate the attorney-client relationship at any time, with or without cause." Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 232 F. Supp. 2d 127, 130 (S.D.N.Y. 2002). Here, there is no question that Mr. Gleizer terminated SSM as counsel. (See Meyer

Decl. Ex. 12.)    Therefore, in accordance with NYRPC Rule 1.16(b)(3), SSM must withdraw as counsel to Mr. Gleizer. Hence, Mr. Gleizer's request for an order to remove counsel is GRANTED. SSM shall file, within 15 days of this order, a motion to withdraw as counsel that includes, pursuant to Local Rule 1.4, the reasons for withdrawal, the posture of the case, and that counsel is asserting a charging lien (given that pre-judgment attachment serves as a lien).

### f. Motion for Recusal

Mr. Gleizer contends that the Court must recuse itself because it allegedly has a personal bias against him and has demonstrated partiality towards SSM.    (See Gleizer Mot. to Recuse.)    As a preliminary matter, Mr. Gleizer's purported affidavit filed pursuant to Section 144 is legally deficient.    The affidavit must "be accompanied by a certificate of counsel of record stating that it is made in good faith."    28 U.S.C. § 144.    However, Mr. Gleizer is proceeding pro se and "cannot supply a certificate of counsel." Williams v. New York City Hous. Auth., 287 F. Supp. 2d 247, 249 (S.D.N.Y. 2003).    The absence of the certificate is fatal, and Mr. Gleizer's attempt to file an affidavit under Section 144 "fails on this threshold matter."    Id.; Brawer, 462 F. Supp. at 744; see also Celli v. New York City, No. 24 Civ. 9743 (JPC) (RWL), 2025 WL 1908386, at *1 (S.D.N.Y. June 9, 2025).

Nonetheless, the Court considers Mr. Gleizer's argument for recusal under Section 455. Mr. Gleizer's chief argument is that the Court must recuse itself because of certain case management decisions; namely that the Court had yet to rule on these outstanding motions. (See Gleizer Mot. to Recuse at 2.) This argument is without merit under Section 455, however, because case management decisions "cannot form a proper basis for a recusal motion." Gurvey v. Cowan, Liebowitz & Latman, P.C., No. 06 Civ. 1202 (LGS) (HBP), 2015 WL 4460868, at *3 (S.D.N.Y. July 21, 2015). It is generally "well established that seeking a judge's recusal simply because a litigant is unhappy with a judge's . . . case management . . . is insufficient grounds to warrant recusal." James v. State Univ. of N.Y., No. 22 Civ. 4856 (JHR) (KHP), 2023 WL 3006104, at *2 (S.D.N.Y. Mar. 3, 2023) (internal quotation marks and citation omitted). Therefore, Mr. Gleizer's argument for recusal based on case management does not warrant recusal. Accordingly, Mr. Gleizer's motion for recusal is DENIED.

## IV. Conclusion

For the foregoing reasons, SSM's motion to attach the Remaining Fee is GRANTED. Within 30 days of this order, SSM shall file a pleading stating its cause of action for breach of contract against Mr. Gleizer and post an undertaking of $1,500.

SSM's motion for preliminary injunctive relief is held in abeyance pending clarifications from SSM and Mr. Gleizer on their positions within 30 days of this order.

SSM's motion to attach the Remaining Fee as a quasi-in-rem jurisdiction basis for a separate matter is DENIED.

Mr. Gleizer's request for an Order to remove counsel is GRANTED. SSM shall file, within 15 days of this order, a motion to withdraw as counsel that includes, pursuant to Local Rule 1.4, the reasons for withdrawal, the posture of the case, and that counsel is asserting a charging lien (given that pre-judgment attachment serves as a lien).

Mr. Gleizer's motion for recusal is DENIED.

Additionally, the parties shall continuously update the Court, by letter, every 60 days regarding Judgment execution efforts abroad.

The Clerk of Court is respectfully directed to close dkt. nos. 155, 168, and 184.

**SO ORDERED.**

Dated:    September 16, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge